IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LYDIA JOHNSON,

        Plaintiff,                     No. CIV S-08-3041 GGH

   vs.

MICHAEL J. ASTRUE,            ORDER
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born February 4, 1958, applied on January 26, 2005 for disability benefits. (Tr. at 102, 12.) Plaintiff alleged she was unable to work due to asthma, sleepwalking, and hearing voices. (Tr. at 118.)

1

In a decision dated February 27, 2008, ALJ Christopher Larsen determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. Ms. Johnson has not engaged in substantial gainful activity since January 26, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*)
>
> 2. Ms. Johnson has the following severe impairments: asthma, chronic obstructive pulmonary disease, depressive disorder with psychotic features, and cocaine abuse in remission (20 CFR 416.920(c)).
>
> 3. Ms. Johnson has no impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find Ms. Johnson has the residual functional capacity to work at all exertional levels, but she must avoid concentrated exposure

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
>Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|     |     |                                                                                                                                                                                                          |
| --- | --- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     |     | to fumes, dusts, odors, gases and poor ventilation. She can understand, remember, and carry out simple one or two-step instructions.                                                                     |
|     | 5.  | Ms. Johnson has no past relevant work (20 CFR 416.965).                                                                                                                                                  |
|     | 6.  | Ms. Johnson was born on February 4, 1958, and was almost 47 years old, and therefore a "younger individual age 45-49" under Social Security regulations, on the date the application was filed (20 CFR 416.963). |
|     | 7.  | Ms. Johnson has a limited education and can communicate in English (20 CFR 416.964).                                                                                                                     |
|     | 8.  | Transferability of job skills is not an issue because Ms. Johnson has no past relevant work (20 CFR 416.968).                                                                                            |
|     | 9.  | Ms. Johnson's age, education, work experience, and residual functional capacity allow her to perform jobs that exist in significant numbers in the national economy (20 CFR 416.960(c) and 416.966).      |
|     | 10. | Ms. Johnson has not been under a disability, as defined in the Social Security Act, at any time since January 26, 2005, the date she applied (20 CFR 416.920(g)).                                         |

(Tr. at 12-21.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Develop the Record and Order a Physical Consultative Examination; and B. Whether the Jobs Identified by the Vocational Expert Were Inconsistent with the Dictionary of Occupational Titles.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ

is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS[2]

    A.  Whether the ALJ Failed to Fully Develop the Record

Plaintiff contends that the ALJ failed to fully develop the record because it does not contain any physical consultative examination by any physician who actually examined plaintiff.

Disability hearings are not adversarial. Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[3] The duty also is heightened in the case of a mentally ill claimant who may not be able to protect him or herself. Id.

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th

---

[2] Plaintiff's substance and alcohol abuse have been mentioned a few times in the record and acknowledged by the ALJ. (Tr. at 19, 47-48, 406-07, 481.) Plaintiff reported to the ALJ at hearing that she no longer uses crack but could not remember when she stopped using. (Id. at 47-48.) It is not clear whether plaintiff has recovered for a sufficient time such that drug/alcohol abuse would not interfere with her ability to work. However, plaintiff, of course, does not raise the issue as to do so may well preclude benefits on a per se basis. The ALJ found that plaintiff's drug use was sufficiently in remission and there was no evidence of current abuse. See Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001). Nevertheless, no one raises the drug/alcohol issue, and the court will not raise it sua sponte.

[3] See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir.1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.)

The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation. See Tonapetyan, 242 F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B). Ordering a consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when necessary to resolve the disability issue. See Reeves v. Heckler, 734 F.2d 519, 522 (11th Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

Plaintiff contends that most of the medical record evidence regarding plaintiff's physical capacity dates back to 2005, and her hearing was in 2008. Based on her physical impairments of asthma, COPD, heel spurs, and hepatitis C, plaintiff argues that further development is necessary.

The ALJ in his opinion explained his reasons for discounting plaintiff's history of asthma and COPD. He noted the scant evidence of treating notes regarding pulmonary problems since 2004. Plaintiff had no active tuberculosis since 2004. She had experienced coughing due to gastritis but it improved when she started Prevacid. A consultative pulmonary function test dated May 12, 2005 indicated no evidence of respiratory impairment pursuant to spirometric criteria. (Tr. at 19, 413.) Plaintiff had also testified that her breathing was "good" lately, as exhibited by her testimony that she enjoys walking. (Tr. at 19.) Plaintiff's remaining problem, being irritated by exposure to odors and fumes, was resolved by the ALJ's preclusion against these irritants. (Id.)

5

1        The undersigned has independently reviewed the record and finds that although plaintiff had treatment including two hospitalizations for bronchial asthma and exacerbation of COPD in the past, (tr. at 190), much of her treatment was on an emergency basis.  It does not appear that plaintiff was on a regular long term regimen for treatment of her asthma with medicine prescribed for daily use such as inhaled corticosteroids or combination inhalers.  See www.mayoclinic.com.  Rather, she would complain of labored breathing or coughing, and was given albuterol and/or a nebulizer breathing treatment on an as needed basis. (See e.g. tr. at 216-18, 379, 190, 380, 383, 505.)  But see tr. at 388 (prescribed Prednisone, Flonase, and Benadryl for allergies.)  If plaintiff had sought and received regular treatment, her asthma might have required less intervention.  A condition which can be controlled or corrected by medication is not disabling.  See Montijo v. Secretary of HHS, 729 F.2d 599, 600 (9th Cir.1984) (Addison's Disease controlled with medications deemed not disabling); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983) (rib condition controlled with antibiotics not considered disabling).  Nor did plaintiff undergo recommended surgery to remove her pelvic mass, diagnosed since 1984, because she was scared. (Id. at 52.)  After 2004 there are almost no records of treatment for asthma or COPD.  The only record after 2005 is a June 23, 2005 chest x-ray indicating clear lungs with no pleural fluid. (Id. at 494.)  In fact, after September, 2005 to the February, 2008 hearing, there are no records of treatment for any physical problems.  Plaintiff testified at hearing that she was not receiving medication in prison, and that she had only been to the hospital for breathing problems once while she was incarcerated. (Id. at 41-42.)

        In regard to heel spurs, there are only a few treatment notes in the record.  On June 6, 2005, plaintiff was diagnosed with heel spurs as substantiated by x-ray. (Tr. at 494-95.)  Plaintiff was also seen once each month in July and August, 2005 for this problem. (Id. at 491, 488.)  These records constitute the sum total treatment for plaintiff's heel spurs.

        Plaintiff was also diagnosed with Hepatitis C on May 17, 2005. (Id. at 496.)  There is no other mention of this impairment or its treatment in the record.  Plaintiff objects to

6

the ALJ's adoption of the non-examining report of plaintiff's physical RFC. (Tr. at 415-24.) In fact, the ALJ stated only that he concurred with this opinion as consistent with the treating record, which he had previously thoroughly discussed. (Id. at 18.) The fact that this reviewer may have omitted Hepatitis C from his discussion is not significant in that there were no treatment records for this condition.[4]

Plaintiff complains that the only records from 2005 were completed by non-examining physicians, and that all of the opinion evidence was two to three years old at the time of the hearing. The ALJ's "duty to develop the record is limited to 'fully and fairly develop[ing] the record as to *material* issues.'" Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997), *quoting* Baca v. Department of Health & Human Servs., 5 F.3d 476, 479-80 (10th Cir.1993) (emphasis added). Plaintiff's asthma, COPD, heel spurs and Hepatitis C were not material enough to require further development. In fact, heel spurs and Hepatitis C were not even found to be severe impairments. These problems were apparently not bothering plaintiff enough to seek treatment for them in the two and a half years prior to her administrative hearing. The ALJ did not have a duty to be plaintiff's advocate in meeting her burden. Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir.1993). Plaintiff has the ultimate burden of proof to produce the evidence that demonstrates she is disabled, 20 CFR § 404.1512(a); Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.

Moreover, plaintiff was represented by counsel at her hearing and if further records were outstanding or required, plaintiff and her counsel had ample opportunity to request them at that time. Instead, Mr. Shore indicated to the ALJ that he had seen the file and had no objections to any exhibits in the record. In response to the ALJ's question whether he thought

\\\\\

\\\\\

---

[4] It should also be noted that plaintiff's credibility was questioned throughout the record, but plaintiff has not raised the issue in this motion. (Id. at 17, 18.)

the record sufficiently complete to make a fair decision, Mr. Shore responded in the affirmative.[5]
(Id. at 34-35.)  In this case, the ALJ fully and fairly developed the record for a fair adjudication.

     B.  <u>Whether the Jobs Identified by the Vocational Expert Were Inconsistent with the Dictionary of Occupational Titles</u>

     Plaintiff next claims that the vocational expert's testimony regarding lack of exposure to environmental irritants in the suggested jobs conflicted with the DOT's [6] description.

     This circuit has found that the DOT does not necessarily control over vocational expert testimony.  <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1436 (9th Cir.1995) ("It was . . . proper for the ALJ to rely on expert testimony to find that the claimant could perform the two types of jobs the expert identified, regardless of their [DOT] classification").  The ALJ may not rely on a vocational expert's testimony without first inquiring whether the testimony conflicts with the DOT.  <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 (9th Cir. 2007).

     Based on the ALJ's hypothetical limiting plaintiff to being able to understand, remember and carry out simple one or two step instructions, as well as a preclusion from concentrated exposure to fumes, dust, odors, gases, and poor ventilation, the expert testified that plaintiff could work as a poultry offal icer[7] or commercial or institutional cleaner, which are both

---

[5]  It should also be noted that plaintiff was incarcerated at the time of the hearing and appeared for the hearing by telephone.  (Id. at 32, 16.)  She has been incarcerated since February 17, 2005.  (Id. at 103.)  Aside from the fact that her incarceration should not interfere with her ability to provide medical records from her place of incarceration, she is not eligible for benefits while she is incarcerated.

[6]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  It is used by the SSA to classify jobs as skilled, unskilled, or semiskilled.  (Id.)  The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

[7]  This job involves shoveling "ice into chicken offal (waste parts) container to cool waste and retard spoilage.  Loads and removes containers, using handtruck.  May tend baling machine to bale wet feathers."  DOT 525.687-054.

heavy and unskilled; or meat trimmer, which is medium and unskilled. (Tr. at 51-52.)

In regard to poultry offal icer, plaintiff points to the VE's testimony that this job would not be exposed to feathers, while the DOT states that a worker "may tend baling machine to bale wet feathers." DOT 525.687-054. As plaintiff was never precluded from working with feathers, and plaintiff does not object to the lack of any such preclusion, plaintiff's argument on this point is without merit. Although plaintiff's asthma was found to be a severe impairment, she has not shown that it was due in any part to feathers.

Plaintiff also contends that the jobs of poultry offal icer and meat trimmer would involve constant exposure to offal, blood and meat parts in a very cold environment. Plaintiff was not restricted to any particular room temperature. (Id. at 50.) She was restricted from odors and poor ventilation. As defendant points out, plaintiff testified that hot weather aggravated her asthma, not cold weather. (Id. at 40.) Extreme heat is not present in these jobs. DOT 525.687-054, 525.684-054. Extreme cold is only present occasionally or up to one third of the time. Id. As far as odors go, nothing in the DOT suggests concentrated exposure to any odors in either of these jobs. Id. ("Toxic Caustic Chem.: Not Present ... Other Env. Cond.: Not Present....") Plaintiff assumes facts not in evidence, that the odors of slaughtered meat would be irritating to an asthmatic or COPD sufferer. Implicit in the ALJ's hypothetical is that odors to be avoided must be irritating. There is no evidence that these odors, unlike perfume for example, would be irritating to plaintiff.

The third suggested job, commercial or institutional cleaner, does not involve exposure to toxic caustic chemicals. DICOT 381.687-014. The vocational expert testified in a consistent manner to the DOT, that she did not think a cleaner would be exposed to such odors. (Tr. at 55.)

This court finds that there was no conflict between the vocational expert's testimony and the DOT, and the ALJ properly relied on the vocational expert's testimony and choice of jobs.

1  <u>CONCLUSION</u>

2  Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment or

3  Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and

4  judgment is entered for the Commissioner.

5  DATED: 05/24/2010                      /s/ Gregory G. Hollows

6                                          GREGORY G. HOLLOWS
                                           U.S. MAGISTRATE JUDGE

7  GGH/076
   Johnson3041.ss.wpd

10